16913

JOHNSON v. LIFE & CASUALTY INSURANCE COMPANY OF TENNESSEE

(3 S. E. (2d), 805)

October, 1938.

The order of Judge Lide follows:

This case was tried before the undersigned, as presiding Judge, and a jury, at the October, 1938, term of the Court of Common Pleas for Anderson County, and resulted in a verdict for the plaintiff. A motion was duly made by the defendant at the proper time for a directed verdict in its favor, which was then refused, but with the consent of counsel for the respective parties, the Court reserved his final decision thereon. Hence the motion was reargued before me fully during the November, 1938, General Sessions term for Anderson County, to wit, on November 28th, and the matter has had my careful consideration.

This action was brought by Ida Johnson as the beneficiary to recover the face value of a policy of insurance issued by the defendant, to wit, the sum of $400.00, with interest, on the life of the plaintiff's son, Bramlett Johnson. The policy was dated May 3, 1937, and Bramlett Johnson, the insured, died on June 8, 1938. The issuance of the policy and the payment of the premiums thereon were admitted.

The defendant sets up in its answer by way of affirmative defense the provisions contained in the policy designated as

"Limitation of Insurance," which copied from the policy are as follows: "Limitation of Insurance.—Within two years from date of issuance of this policy, the liability of the Company under same shall be limited, under the following conditions, to the return of premiums paid thereon: (1) If the Insured was not in sound health upon the date of issuance and delivery of this policy or if the Insured before its date had Tuberculosis, or Diabetes, or Cancer, or Chronic Bronchitis, or disease of the heart or blood vessels, or disease of Kidneys, or Cirrhosis of the Liver; or (2) if the Insured shall die by his own hands, whether sane or insane, or as a result of acts committed by him while in the commission of or as a punishment for some act in violation of law, or from the malicious or unlawful act of anyone who is a beneficiary hereunder; or (3) if insured is pregnant at date of issuance of policy, and death results from such pregnancy. Knowledge of the agent shall not be taken to be knowledge of the Company. Where the Statute of the State in which this policy is written contains a different provision on this subject than the above, the language of such Statute shall be substituted to the extent of this difference for this clause, but no further."

The answer properly alleged the tender of the premiums which had been paid.

And the motion of the defendant for a directed verdict also relies upon the above-quoted provisions of the policy, and further says: "And the uncontradicted testimony showed that the insured was not in sound health on the date of the issuance and delivery of the policy and the testimony further demonstrates that within two years from the date of the issuance of the policy the insured suffered from heart trouble and disease of the kidneys, from which he died."

The attending physician's certificate of death states that the cause of death was "nephritis—(Bright's Disease)." And the evidence is clear that prior to the issuance of the policy one of the insured's kidneys had been removed, and

that there is close association between kidney disease and heart trouble.

It was, however, my opinion during the course of the trial that the case should be submitted to the jury on the question of waiver, and after mature reflection I am of the same opinion, and I think the verdict was well sustained by the evidence.

It is very earnestly contended by counsel for the defendant that there can be no question of waiver in a case of this kind, and that in the instant cause the company did nothing which would constitute or be evidence of waiver of the above-quoted provisions of the policy, and that the company did nothing to cause the insured or the beneficiary to change their position or status. Quoting from counsel's well-prepared memorandum they say: "They insured him, but said, in effect, 'Though we know of your condition, we will insure you, but our liability under the policy is limited for a period of two years from the date of the policy, if you are not in sound health or if, before date of the policy, you had disease of the heart or disease of the kidneys.' "

The limitation of insurance contained in the policy is of course a valid provision, but, reduced to its simplest terms, where the insured before the date of the issuance of the policy had a disease of the kidneys, the insurance is contingent upon the insured's living two years after the date of the issuance of the policy; and until the two years has elapsed there is *no insurance*; and there being no insurance the premiums paid will be returned. Stating it another way, the insurance will be forfeited if death occurs within the period of two years.

Certainly such a provision of an insurance policy may be waived by the insurer. And an examination of the testimony in this case will show that there was ample evidence of waiver. The plaintiff testified that certain agents of the company, to wit: Messrs. Herring and Blackwell, called at her house on May 3, 1937, the date of this very policy, for the

purpose of collecting insurance on other policies held by members of her family with the defendant company, and that on this occasion one of these agents brought up the subject of writing insurance on other members of the family. I quote the following from the transcript of Mrs. Johnson's testimony:

"Q. All right, how did the subject of this policy come up? A. Well, I paid for the insurance, and he says, 'Don't you all want me to write some insurance on the rest of you?' I says, no, sir, we are carrying all the insurance we are able to, except Bramlett, and he hasn't got any, only a paid-up policy. And he says, 'I don't see why you haven't got one on him.' I says, well, they turned him down when he had his kidney removed and wouldn't insure him. He says, 'Well, he's at work now, able to do work, running thirty-six looms; I don't see why he can't get insurance. * * * ' " (There was an interruption at this point.)

"Q. All right, you may proceed now. What did he say about it? A. He says, 'I don't see why, he is working every day and all down here in the mill,' says, 'I don't see why he can't get any insurance'; says, 'I'll write you up one for him'; And I says, all right.

"Q. And what did he do then? A. He wrote it up and, he says, 'When you get your policy back, Mrs. Johnson, you pay your premium and it will be in full benefit.' And that's about all he said.

"Q. Now, did you or not pay any premium to Mr. Blackwell then and there on this policy? A. I didn't pay him anything until the policy came back.

"Q. When did it come back? A. In about two weeks.

"Q. Who brought it back? A. Mr. Herring.

"Q. Did you pay him a premium? A. I give him twenty-five cents when he brought the policy."

This testimony definitely shows that the agents of the company were informed that Bramlett Johnson, the insured, had previously suffered from kidney disease, but that not-

withstanding this fact, it was stated by one of these agents that the policy would be issued and that when it was delivered it would be in full benefit. Hence the plaintiff and the insured were fully justified in believing that the policy represented a present liability of the defendant company and that the payment of the full amount thereof could not be defeated because Bramlett, the insured, previously had a disease of the kidney.

It is also a fair, if not irresistible, inference from this evidence that if Mrs. Johnson or the insured had been informed that the insurance was really contingent upon Bramlettt's surviving for a period of two years the policy would not have been accepted, there being no present insurance.

Our Supreme Court has not, so far as I have been able to find, construed provisions in an insurance policy bearing any close similarity to the "Limitation of Insurance" contained in this policy. But the principles laid down in our decisions are quite sufficient, I believe, to support the statement above made that such provisions may be waived.

In the case of *Gandy v. Insurance Co.*, 52 S. C., 224-229, 29 S. E., 655, 656, the Court says: "An insurance contract, like any other contract, may be altered by the contracting parties, and the insurer may, of course, waive any provision for forfeiture therein. It may also waive the provision relating to the manner or form of waiver by its agents, since this clause has no greater sanctity than any other part of the instrument."

The suggestion that the provisions in question are not "for forfeiture" has been fully considered by me and while it is true that they do not operate to make the policy absolutely null and void from its inception, there is certainly a forfeiture (with the negligible exception of the return of what the insured had paid by way of premiums) if the insured died in two years. In the light of the evidence in behalf of the plaintiff here, the position of the defendant that it pleads no forfeiture but is ready to pay the amount due

according to the terms of the policy, to wit, the amount of the premiums paid, is to "speak the word of promise to the ear and break it to the hope." Even if the stipulation may not be technically termed one "for forfeiture" it may, like any other term of the contract, be altered by agreement or waived. It has no such sanctity as will prevent waiver.

The Court also says in the cited case: "Waiver implies an intention to give up a known right, and generally rests in agreement, express or implied. But there may be a waiver by estoppel, in which case the conduct of one, inconsistent with a known fact and inducing a belief that such fact would not be asserted, precludes him from asserting that he has not intentionally relinquished the right founded on such fact."

In the case of *Able v. Pilot Life Ins. Co.*, 186 S. C., 26, 194 S. E., 628, in an elaborate and able opinion delivered by the Chief Justice, he cites and quotes from all the important previous decisions laying down the doctrine of waiver, as applied to insurance policies, and reaffirms it in clear and explicit terms.

The defendant cites in support of its motion three cases from other states in which the defendant company in the case at bar was a party, two of these cases having been decided by the Court of Appeals of Tennessee, and one by the Court of Appeals of Georgia, and copies of these decisions were filed with me. The Tennessee cases are *Life & Casualty Insurance Co. v. Hall*, May 18, 1929,[1] and *Russell v. Life & Casualty Insurance Co.*, 12 Tenn, Ap., 205, July 26, 1930, and the Georgia case is *Life & Casualty Insurance Co. v. Carter*, 55 Ga. App., 622, 191 S. E., 153, 155. These cases involve a "limitation of insurance" identical with or similar to that in the cases under consideration, and all of them hold that the limitation is a valid one. The question of waiver was raised in the *Russell* and *Carter cases*, but the Court in each case held that there was

---

[1] No opinion for publication.

no waiver, although it was admitted that the insurer was informed of the physical condition of the insured when the policy was written, and since the insured died within the period of two years the company was adjudged to be liable only for the return of the premiums. The evidence of waiver in these cases, however, is not entirely comparable to that in the case at bar. Of course waiver is a question of fact and depends upon the evidence in each case. But if the authorities cited may be construed to abrogate the doctrine of waiver with reference to the limitation of insurance clause, I do not think they are in harmony with the principles laid down by our own Supreme Court.

In the case of *Life & Casualty Insurance Co. v. Carter,* *supra,* the Georgia Court of Appeals says: "We do not think there was any estoppel by waiver in the instant case, for it would not be unjust to permit the insurance company to assert its rights under the 'Limitation of Insurance Clause' in the policy. Both parties contracted with the knowledge that prior to the date of the issuance of the policy the insured suffered with a serious disease or complaint, and the evidence authorized an inference that the serious disease or complaint of the insured was one of the elements that entered into and brought about this particular kind of insurance contract."

There is no evidence in the instant case which would authorize the inference that this particular kind of policy was issued because of the physical condition of the insured, other than the fact that the company was fully informed concerning his condition. Certainly so far as the insured and his beneficiary were concerned there was not the slightest suggestion that the policy would be conditional or contingent. On the contrary, the agent said that since the insured was at work and able to work he did not see why he could not get *insurance*—not insurance postponed for the term of two years; and further stated without qualification that when the policy was received and the premium paid it would be in *full benefit*—not partial benefit. It seems to me that in any view

of the matter this was evidence of waiver which would require the submission of the case to the jury.

I am therefore of opinion that the motion for a directed verdict in favor of the defendant should be, and the same is hereby, overruled and refused; and if the motion may be also treated as one for a new trial, it is likewise overruled and refused.

It was agreed that if the jury found a verdict for the plaintiff they need not' specify the amount, but in that case the verdict would be construed as for the face of the policy with interest. It is, therefore,

Ordered, that the plaintiff have judgment against the defendant for the sum of Four Hundred and Ten ($410.00) Dollars, together with the costs of this action.

*Messrs. Watkins & Prince,* for appellant,

*Mr. C. B. Earle,* for respondent,

July 11, 1939.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The appeal presents two questions: Error is assigned because the Court refused to grant the motions of the defendant (a) for a nonsuit, and (b) for a directed verdict.

After a careful examination of the record, we find no error. The motion for nonsuit was properly overruled, and the conclusions reached by his Honor Judge Lide, in the

lower Court, in his well-considered order refusing the motion for a directed verdict, meets with our approval.

The only case cited in appellant's brief not discussed in the circuit order is that of *Hood v. Life & Casualty Insurance Company of Tennessee,* 173 S. C., 139, 175 S. E., 76. The *Hood case* was an action to recover damages for fraud and deceit, and did not involve waiver. In the case at bar, the question of waiver was alone at issue; no fraud is charged.

The facts and issues made in the two cases are too dissimilar to warrant the application of the same principles of law.

The disposition made of the case by the Court being satisfactory to us, we adopt its order, which will be reported, as the judgment of this Court.

Judgment affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER and MR. ACTING ASSOCIATE JUSTICE G. DEWEY OXNER concur.

MR. JUSTICE CARTER did not participate on account of illness.