29197. NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY *v.* POLLARD.

Decided March 6, 1942. Rehearing denied April 3, 1942.

*William F. Buchanan, Truett Brooksher,* for plaintiff in error.
*LeRoy Finch,* contra.

MacIntyre, J. The plaintiff recovered upon an industrial life-insurance policy, for the death of her son. To the overruling of its motion for new trial the defendant excepted.

This is a case where the application was not attached to or made a part of the policy, and where the evidence clearly presented an issue of fact as to whether the applicant for insurance had made false representations with intent to defraud or wilfully conceal material facts in his application. Where, as here, the application is not attached to the policy, the company may not treat the application as a part of the contract or introduce it in evidence as such, or to show that certain statements were contracted or warranted to be true; but the company could plead and prove that the insured had made these false and fraudulent statements as to his health, and that the company was fraudulently induced to issue the policy and that the policy was therefore void, not as a matter of contract, but because of fraudulent procurement. *Johnson* v. *American National Life Insurance Co.,* 134 *Ga.* 800 (68 S. E. 731); *Metropolitan Life Insurance Co.* v. *Bugg,* 48 *Ga. App.* 363 (172 S. E. 829). The company here is seeking to avoid liability on the ground of fraudulent procurement, in that the insured at the time of his application was not in sound health as he represented himself to be, but was suffering from "bronchiectasis" at the time and was being

treated by the doctor therefor. The plaintiff contended that the insured told the company's agent that he had had "bronchiectasis" but that the agent put it down "bronchitis," and that the company waived any conditions voiding the policy in the event of unsound health on the date the policy issued and was estopped from setting up that provision of the policy in defense to an action on said policy.

The application, dated May 15, 1939, stated that the agent of the company asked the insured: "Are you in good health?" The insured answered: "Yes." The agent then asked: "Who is your doctor?" Answer: "Dr. Aven, Medical Arts Bldg." He was asked: "What illness, injury or accident have you ever had? Give details." He answered: "Bronchitis 1938; May. Flu. Mar. 1939. Dur. 1 wk. recovered." All of the foregoing appears in the application. The insured died on May 24, 1940, of heart trouble following an operation for bronchiectasis. One of the provisions of the policy is that "No obligation is assumed by the company prior to the date hereof. Except as elsewhere herein provided, if the insured is not alive or is not in sound health on the date hereof. . . Its terms can not be changed or its conditions varied, except by written agreement signed by the president or secretary of the company." But the question here presented is not a question of waiver so much as of notice and estoppel. See *Johnson* v. *Ætna Ins. Co.*, 123 *Ga.* 410. The knowledge of the agent who solicited the insurance, whose duty it was to obtain this information and who filled in the application with the insured's answers, was notice to the company, and the company is estopped from asserting that it did not know of the illness. *Life &c. Insurance Co. of Tenn.* v. *Burkett,* 38 *Ga. App.* 328, 332 (144 S. E. 29); *Fair* v. *Metropolitan Life Insurance Co.,* 5 *Ga. App.* 708 (63 S. E. 812). Furthermore, from the application itself, the company knew that the insured had had "bronchitis" and that Dr. Aven, whose office was in the Medical Arts Building, had treated him. They also knew the insured was twenty-one years old, was six feet one inch in height, and yet weighed only 146 pounds. It seems to us that these facts, that the applicant had had "bronchitis," was six feet one inch tall, but weighed only 146 pounds, were sufficient to put the company on notice of the true condition of the insured's health and placed a duty on the company to make some inquiry of Dr. Aven. It also

appears from the testimony of the plaintiff, who was present when her son made the application and gave the answers to the questions therein, that at the time the application was made the insured told the defendant's agent that he had had "bronchiectasis," but that evidently the agent put it down "bronchitis." It also appears from medical testimony that the average layman is apt to confuse the two terms and use them interchangeably. Dr. Aven told the insured he had had "bronchiectasis," but did not tell him the gravity thereof.

Taking all the facts and circumstances of the case into consideration we think the jury was authorized to find that the insured was not guilty of fraud in procuring the policy, and that the company knew or should have known, not only through its agent, but also through matters stated in the application, that the insured was not in good health at the time the policy was issued, and that by accepting the premiums it waived any defense it might have insisted on under the policy. The jury was authorized to find that the insured was not guilty of fraud, but that on the contrary his acts were consistent with good faith.

The charge complained of was in the language of *Rome Insurance Co. v. Thomas,* supra, and was applicable to the facts of this case. The agent here was not, as urged by the defendant, a mere solicitor, and therefore not empowered to waive any right of the company. He had been employed by the company for seventeen years, and actually made out the application. This was an industrial life-insurance policy, and the rule that "knowledge of material facts on the part of an agent of an insurance company is notice to the company; and if, with this notice, the company issues a policy, it is estopped in equity from deriving a benefit from any stipulation in the policy which might have availed if it had been ignorant of the facts," is especially applicable "for the reason that [the industrial policy] operates largely among and principally affects that portion of our population who pay for the protection which life insurance affords out of the weekly earnings derived from their labor, and who are in many instances easily imposed upon by the statements of agents." *Id.* 546.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*

ON MOTION FOR REHEARING.

MacIntyre, J. The policy in the instant case provided: "No

obligation is assumed by the company prior to the date hereof. Except as elsewhere herein provided, if the insured is not alive or is not in sound health on the date hereof; or if before the date hereof, the insured has been rejected for insurance by this or any other company, order, or association, unless such rejection be specifically recited in the 'Space for Endorsements' in a waiver signed by the secretary, then, in any such case, the company's full liability shall be discharged by the payment of the sum of the premiums received hereunder." In *Metropolitan Life Insurance Co.* v. *Hale,* 177 *Ga.* 632 (170 S. E. 875), the policy contained a provision that "if the insured . . has within two years before the date hereof been attended by a physician for any serious disease or complaint, . . the company may declare this policy void, and the liability of the company in the case of any such declaration in the case of any claim under this policy shall be limited to the refund of the premiums paid on the policy." The defendant contends that the court overlooked its second defense "that under paragraph 3 of the policy [which is quoted above] if the insured was not in sound health on the date of the policy, the liability of the company, under the contract, would be limited to a return of the premiums paid," which it tendered into court. This defense was not overlooked; however it might be stated in connection therewith that it is true that "limitation-of-insurance clauses" have been recognized and upheld by his court, as shown by *Life & Casualty Insurance Co.* v. *Carter,* 55 *Ga. App.* 622 (191 S. E. 153), and *Gray* v. *Life & Casualty Insurance Co.,* 48 *Ga. App.* 80, 82 (171 S. E. 835), cited by the defendant. In such cases the insurer and the insured both have full knowledge that the insured has suffered from some malady, the existence of which is one of the elements that enter into and bring about the particular kind of insurance contracted; and the insurer and the insured agree that for a definite period of time *following* the issuance of the policy (usually the reasonable period of two years) the insured shall be, so to speak, on probation or under observation, and if he lives and is in good health during the entire period, after such probation or observation period is over the policy will then become binding on the parties for its full amount; but if the insured dies during that period the company's liability extends only to a return of the premiums paid. *Life & Casualty Insurance Co.* v. *Carter,* supra. But such were not the facts in

the instant case. Here the latter part of the "limitation-of-insurance clause" was that the "company's full liability shall be discharged by the payment of the sum of the premiums received hereunder." In the *Hale* case, supra, the latter part of the "limitation-of-insurance clause" was that "the company may declare this policy void, and the liability of the company in the case of any such declaration in the case of any claim under this policy shall be limited to the refund of the premiums paid on the policy." It seems to us that the "limitation-of-insurance clause" in the present case and the "limitation-of-insurance clause" in the *Hale* case, supra, are, in legal effect, the same, and that the present case comes under the rule announced in the *Hale* case and not under the rule announced in the *Carter* and *Gray* cases and like cases, where the evidence authorized an inference that the malady was one of the elements that entered into and brought about the particular kind of insurance contracted. Of course, had the jury seen fit to believe the defendant's other defense of fraud in procurement, as contended in its first defense, the company could not be held liable for the face amount of the policy.

*Rehearing denied. Broyles, C. J., and Gardner, J., concur.*